## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STEPHANIE FUENTES, JETAIME HOWARD, MIANIKA SMITH, SHARI GOODMAN, and JERMAIN HAYES, Individually And On Behalf of All Others Similarly Situated, | : : : : : | |
| Plaintiffs, | : | Case No. _____ |
| v. | : | |
| | : | |
| UNIRUSH, LLC d/b/a UNIRUSH FINANCIAL SERVICES, RUSH COMMUNICATIONS, LLC, RUSH COMMUNICATIONS of NYC, INC., META FINANCIAL GROUP, INC., and METABANK, | : : : : : | CLASS ACTION COMPLAINT JURY TRIAL DEMANDED |
| Defendants. | : : | |

Plaintiffs Stephanie Fuentes, Jetaime Howard, Mianika Smith, Shari Goodman, and Jermain Hayes ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, bring this action against UniRush LLC d/b/a UniRush Financial Services, Rush Communications, LLC, Rush Communications, of NYC, Inc., Meta Financial Group, Inc. and MetaBank (collectively "Defendants"), and state as follows:

## NATURE OF THE CASE

1.     This action is brought by Plaintiffs, individually and on behalf of a class of similarly situated holders of a RushCard,  a prepaid Visa card promoted and sold through Defendants UniRush LLC d/b/a UniRush Financial Services, Rush Communications, LLC, Rush Communications of NYC, Inc. (collectively, "Rush") and issued by Meta Financial Group, Inc. and MetaBank  (collectively, "MetaBank").  Plaintiffs seek damages and injunctive relief based upon the unlawful conduct of Defendants in denying such account holders the ability to obtain funds in their accounts and in misappropriating funds held in the RushCard accounts.

2.      As a result of Defendants' bad faith, and unfair and unlawful conduct, Plaintiff and Class members have been prevented from accessing their protected assets to purchase items as basic as food, clothing and shelter.  Defendants have converted some monies for their own use and have unlawfully imposed fees and charges on Plaintiffs and Class members.

3.      Plaintiffs and Class members seek damages, exemplary and punitive damages where appropriate and allowed, and an injunction enjoining the continuation of Defendants' unlawful conduct, restitution and disgorgement.

## PARTIES

4.      Plaintiff Stephanie Fuentes is a resident and citizen of Westchester County, New York.

5.      Plaintiff Jetaime Howard is a resident and citizen of Paulding County, Georgia.

6.      Plaintiff Mianika Smith is a resident and citizen of Brevard County, Florida.

7.      Plaintiff Shari Goodman is a resident and citizen of DeSoto County, Florida.

8.      Plaintiff Jermain Hayes is a resident and citizen of Hillsborough County, Florida.

9.      Defendant UniRush LLC d/b/a UniRush Financial Services, is a Delaware limited liability company with its principal place of business located in Cincinnati, Ohio.

10.     Defendant Rush Communications, LLC, is a Delaware limited liability company with its principal place of business in New York, New York.

11.     Defendant Rush Communications of NYC, Inc., is a Delaware corporation with its principal place of business in New York, New York.

12.     According    to    the    website,    www.rushcommunications.com,    "Rush Communications" is the holding company for UniRush LLC d/b/a UniRush Financial Services.

13.     Defendant Meta Financial Group, Inc., is a Delaware limited liability company with its principal place of business in Sioux Falls, South Dakota.

14.     Defendant MetaBank is a federally chartered savings bank with its headquarters in Sioux Falls, South Dakota.

15.     According to the website, www.metafinancialgroup.com, Meta Financial Group, Inc. is the holding company for MetaBank.

16.     Whenever reference in this Complaint is made to any act of Defendants, the allegation shall be deemed to mean that the officers, directors, agents, representatives, subsidiaries, affiliates and employees of the Defendants did or authorized the act while actively engaged in the management, direction, or control of the affairs of the corporate Defendant, and while acting within the course and scope of their employment.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class are citizens of a state different from Defendants.

18.     Venue is proper pursuant to 28 U.S.C. §1391 in that Plaintiff Stephanie Fuentes resides in this District; Defendants Rush Communications, LLC and Rush Communications of NYC, Inc. have their principal place of business in this District; some of the acts and transactions giving rise to this action occurred in this District; Defendants are authorized to conduct business in this District, have intentionally availed itself of the laws and markets within this District through distribution and sale of their products and services in this District, do substantial business in this District, and are subject to personal jurisdiction in this District.

## **FACTUAL BACKGROUND**

### **RushCard and Its Purpose**

19.     According to the Federal Deposit Insurance Corporation, approximately 17 million Americans are considered "unbanked" as they are without bank accounts.  Another 58 million are "underbanked," meaning they lack access to traditional banking services, from check cards to saving accounts.

20.     In January of 2003, Rush began offering the RushCard to consumers throughout the country. The RushCard is a prepaid VISA card currently issued by MetaBank pursuant to a license from Visa USA, Inc.

21.     According to its website, the RushCard was established to help those Americans who did not have access to traditional banking services by providing them with financial services. RushCard was established with a belief that "every American should have access to an affordable place to keep their hard-earned money – one that's safe and convenient." [1]

22.     Acknowledging that it is the poor and working class Americans who cannot or choose not to establish traditional banking accounts, RushCard founder Russell Simmons has stated, "A decade ago, I watched poor and working-class families standing in long lines outside check-cashing stores, waiting for the privilege of paying to cash their paychecks.  I thought there had to be a better way." [2]

---

[1] https://www.rushcard.com/About-Us?clicksource=learnmorebutton (accessed October 20, 2015).
[2] http://www.nydailynews.com/opinion/russell-simmons-low-income-n-y-ers-payroll-cards-article-1.2329942 (accessed October 20, 2015).

23.     The RushCard may be used online, in stores or anyplace one might use a normal debit card, which makes it more convenient than cash or checks.  Account holders may access their funds through ATM machines and load money onto the card at various retail locations.

24.     The RushCard allows account holders to have their employment wages directly deposited to the card.  In fact, Rush advertises that funds directly deposited to the RushCard will be available to the account holder two days sooner than if the direct deposit was made to a traditional banking account.[3]

25.     RushCard charges account holders fees such as monthly fees, ATM withdrawal fees, transaction fees, balance inquiry fees, bank counter withdrawal fees, and fees for inactive accounts.

### RushCard System Update Fiasco

26.     On or about October 11, 2015, some RushCard customers received notice, by text message, that RushCard would be updating its system from 3 a.m. to 8 a.m. ET on October 12, 2015, during which time customers would be unable to access their accounts, for funds or information.

27.     Unfortunately, the "temporary" loss of access to accounts lasted longer than the expected five hour period.  The system remained down, with customers locked out, for many days. Several customers still have not regained access.

28.     During the time the system was down, RushCard customers did not have access to their funds, causing immense hardship, including the inability to pay for basic necessities such as food, rent, electricity and gas. Additionally, customers were unable to pay their household bills, resulting in late fees being accessed.

---

[3] https://www.rushcard.com (accessed October 20, 2015).

29.     Customers who have regained access to their RushCard accounts have noted discrepancies in their account balances, including account balances completely wiped out.[4] Customers have also noted that they have been charged balance inquiry fees for their failed ATM withdrawal attempts during the time period the RushCard system was down.

30.     As a direct and proximate result of the actions described above, Plaintiffs and members of the proposed classes have been damaged.

## PLAINTIFF SPECIFIC FACTS

### Plaintiff Stephanie Fuentes

31.     Plaintiff Stephanie Fuentes has held a RushCard for approximately 7- 8 years.  She has her wages directly deposited to her RushCard.

32.     On or about Wednesday, October 14, 2015, Plaintiff Stephanie Fuentes attempted to withdraw money from her RushCard using an ATM in order to pay for a taxi.  She received a message stating that she had insufficient funds, although she knew this not to be true.  She had to borrow money from a neighbor to pay for the taxi.

33.     Plaintiff Stephanie Fuentes called Rush to inquire about the error in her account balance only to receive a recorded message that Rush was experiencing a high volume of calls followed by the line being disconnected.  She made repeated attempts to call Rush only to have the same experience.

34.     Due to being unable to access the funds in her RushCard account, Plaintiff Stephanie Fuentes had to borrow money from a family member in order to feed her child, pay her electric bill so that the power would not be disconnected and buy a metro card so that she would

---

[4] *See*, http://finance.yahoo.com/news/rushcard-problems-cuts-off-thousands-174954752.html (accessed October 20, 2015); http://time.com/money/4078201/rush-card-account-lockout/ (accessed October 20, 2015).

be able to get to work.

35.     Plaintiff Stephanie Fuentes was finally able to access her funds through an ATM on Saturday, October 17, 2015.  On Monday, October 19, 2015, she was able to access her account through the RushCard website only to discover that her account balance is missing at least $20 that she had in her account prior to the system update.

**Plaintiff Jetaime Howard**

36.     Plaintiff Jetaime Howard has held a RushCard since 2003.  She has her wages directly deposited to her RushCard.

37.     On or about the beginning of October 2015, due to fraudulent activity on her account, Plaintiff Jetaime Howard had requested that her RushCard be closed and a new one issued.  On or about October 9, 2015, Plaintiff Jetaime Howard's wages were directly deposited to her RushCard.  Unfortunately, due to an internal error at Rush, her replacement card had not been re-issued.  Rush agreed to expedite the new card so that Plaintiff Jetaime Howard would receive it on Monday, October 12, 2015.

38.     Plaintiff Jetaime Howard had a deadline of 5 p.m. on Monday, October 12, 2015 to pay her power bill to keep her electricity from being disconnected.  She left work at noon that day so that she could pick up her new RushCard, activate it and pay the power company by 5 p.m.

39.     When she called to activate her replacement card after arriving home after noon, Plaintiff Jetaime Howard received a recorded message that the system would be down from 3 a.m. until 8 a.m. due to an update.  She continued to call that afternoon in an attempt to activate her card but each time received the same recording.

40.     Plaintiff Jetaime Howard had no other way to access the funds in her RushCard account.  As a result, she missed the deadline and her power was disconnected.

41.     Due to being unable to access her wages, Plaintiff Jetaime Howard was forced to choose between buying gas to get to work and feeding her four children.  Putting her children first, she was forced to miss three days of work due to insufficient funds.

42.     Plaintiff Jetaime Howard had to ask a family member to send her some money through Western Union.

43.     Eventually Plaintiff Jetaime Howard was able to activate her new card by telephone but the card still did not work.  Finally on October 16, 2015, Plaintiff Jetaime Howard was able to access her account using her old card which was supposed to have been deactivated.  Fearing future problems, she withdrew all of the money in her account, approximately $750, which required four separate transactions.  She was charged a $2.50 processing fee for each transaction.

44.     Adding further insult, Plaintiff Jetaime Howard was charged 50 cents every time she unsuccessfully tried to use her RushCard from October 12 – October 16, 2015.

**Plaintiff Mianika Smith**

45.     Plaintiff Mianika Smith has held a RushCard for approximately eight years. She has her wages directly deposited to her RushCard.

46.     Plaintiff Mianika Smith received a text message on Monday, October 12, 2015 advising that the RushCard system would be unavailable from 3 a.m. until 8 a.m. that day due to an update.  She received another text message around noon that day advising that the update was complete and that accounts were now accessible.

47.     Plaintiff Mianika Smith then checked her account online and saw that her account balance was zero.  She knew this was an error because she had a few dollars in her account prior to the update.  She then checked her balance on the RushCard mobile application and through the ATM and each time was advised that her account balance was zero.

48.     On or about Friday, October 16, 2015, Plaintiff Mianika Smith's wages of $203 were directly deposited into her RushCard account.   On that day when she attempted to withdraw $200 from an ATM, she received a message stating that her "financial institution" would not authorize the $200 amount.   She was able to withdraw only $180 requiring two separate transactions and for each was charged a $2.50 ATM transaction fee.

49.     Due to being unable to access her funds in her RushCard account, Plaintiff Mianika Smith was late in paying her rent and late in paying several bills.

50.     Currently, Plaintiff Mianika Smith's RushCard account is showing a negative account balance of $400 in error.

**Plaintiff Shari Goodman**

51.     Plaintiff Shari Goodman has held a RushCard since 2009. She has her wages directly deposited to her RushCard.

52.     Plaintiff Shari Goodman has been unable to access the funds in her RushCard account since October 12, 2015.  She had a direct deposit of wages that was sent by her employer on October 15, 2015, but she has had no access to these monies.

53.     She has automatic bill pay for several accounts scheduled to occur in concert with her pay dates.  With no access to her RushCard funds, Plaintiff Shari Goodman's bills will not be paid and she will face late charge assessments.

54.     Plaintiff Shari Goodman has three children and has had to use all of her money on hand to feed and care for her children.

55.     Plaintiff Shari Goodman was to start classes on October 19, 2015 in order to finish her last year of college.  Due to being unable to access her RushCard account, Plaintiff Shari Goodman had no means to pay her tuition and, therefore, was prevented from starting classes.

**Plaintiff Jermain Hayes**

56.     Plaintiff Jermain Hayes has held a RushCard since 2014.  He has his wages directly deposited to his RushCard.

57.     Plaintiff Jermain Hayes was unable to access the funds in his RushCard account from October 12, 2015 until October 21, 2015.

58.     Due to being unable to access the monies in his RushCard account, Plaintiff Jermain Hayes has been unable to pay his electric bill as well as other bills.

59.     Plaintiff Jermain Hayes has made multiple attempts to contact Rush by telephone only to be disconnected each time.  He ultimately called MetaBank only to be told that the RushCard system was experiencing problems.

60.     Plaintiff Jermain Hayes has several rent-to-own contracts for appliances in his home.  These contracts impose daily late fees if the invoice is not paid timely.  Due to the late charges assessed while he was unable to access the monies in his RushCard account, Plaintiff Jermain Hayes is at risk for repossession of these appliances.

61.     Plaintiff Jermain Hayes had had to borrow money from relatives and friends in order to care for and feed his wife and two children.

62.     Plaintiff Jermain Hayes was able to access his RushCard account balance only to discovery that at least $100 is missing.

**INAPPLICABLE OR UNENFORCEABLE ARBITRATION CLAUSE**

63.     Section 30 of the RushCard Cardholder Agreement purports to require that certain disputes be individually arbitrated.  Section 30 is unenforceable because it is substantively and procedurally unconscionable and/or is against public policy.

64.     To the extent that Defendant asserts that the claims of Plaintiffs and Class members are subject to an arbitration agreement or a class action waiver, Plaintiffs and the Class seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

65.     Plaintiffs and Class Members were fraudulently induced into purchasing RushCards and depositing money into their RushCard accounts because they were lead to believe their funds would be "safe and protected" with unhindered access to these monies.

66.     The terms of RushCard's arbitration provision, waiver of class action rights and right to trial by jury are unconscionable and Plaintiffs and Class Members would not have agreed to those terms or deposited any money with RushCard had they known about the fraudulent, unlawful and unfair activity and misrepresentations as described in this Complaint.

## CLASS ALLEGATIONS

67.     A class action is the proper form to bring Plaintiffs' claims under FRCP 23. The potential classes are so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the classes, and the representative parties will fairly and adequately protect the interests of the classes.

68.     Plaintiffs seek to represent the following  "Class":

> All consumers in the United States who held a RushCard and were denied access to their accounts and funds beginning October 12, 2015.

69.     Plaintiff Jetaime Howard also seeks to represent the following "Georgia Subclass":

> All consumers residing in Georgia who who held a RushCard and were denied access to their accounts and funds beginning October 12, 2015.

70.     Plaintiffs Mianika Smith, Shari Goodman and Jermain Hayes also seeks to represent the following "Florida Subclass":

> All consumers residing in Florida who who held a RushCard and were denied access to their accounts and funds beginning October 12, 2015.

Excluded from the above Class, Georgia Subclass, and Florida Subclass are Defendant and its officers, directors and employees.

71.     This action satisfies all of the requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

72.     ***Numerosity:***  Members of the Class, Georgia Subclass, and Florida Subclass are so numerous that joinder of all members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are at least thousands of putative Class members throughout the United States and at least thousands of Georgia Subclass and Florida Subclass members. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.

73.     ***Commonality***:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

   a)  whether Defendants owed duties to Plaintiffs and the proposed classes, the scope of those duties and if they breached those duties;

   b)  whether Defendants' conduct was unfair or unlawful;

   c)  whether Defendants breached their contracts with Plaintiffs and the proposed classes;

d) whether the arbitration and class action waiver provisions of the RushCard cardholder agreement are unconscionable, illusory, fraudulent or otherwise invalid;

e) whether Plaintiffs, the Class and the Subclasses have sustained damages as a result of Defendants' conduct alleged herein and, if so, what is the proper measure of such damages;

f) whether Plaintiffs, the Class and the Subclasses are entitled to restitution and, if so, what is the proper measure of restitution; and,

g) whether Plaintiffs, the Class and the Subclasses are entitled to declaratory and injunctive relief.

74. ***Typicality***: Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all members of the Class and Subclasses were injured through the common misconduct described above and were subject to Defendants' unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclasses.

75. ***Adequacy of Representation:*** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Classes and Subclasses. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Classes and Subclasses and the infringement of the rights and the damages they have suffered are typical of other Class members and of other Subclass members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

76. ***Superiority:***   The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available

methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

77.     The nature of this action and the nature of laws available to Plaintiffs, the Class and Subclasses make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs, the Class and Subclasses for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

78.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

79.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

## COUNT I – NEGLIGENCE

(On Behalf of the Class)

80.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

81.     Defendants owed duties to Plaintiffs and the proposed Class as RushCard account holders and paying customers to use reasonable care to protect and secure customer funds and provide access to those monies.

82.     Defendants breached their duties to Plaintiffs and the proposed Class by failing to provide customers access to their RushCard funds for a prolonged period of time causing hardship to the Plaintiffs and the proposed classes.

83.     Defendants breached their duties to Plaintiffs and the proposed Class by failing to secure customer funds in that customers have noted discrepancies in their account balances and funds missing.

84.     Defendants failed to use reasonable care in communicating the information about the Rushcard system update and restriction of access to customer funds, as well as the safety and security of account funds.

85.     Plaintiffs and the proposed Class justifiably relied upon the information supplied and representations made by Defendants, and, as a result, engaged in business with Defendants and lost money.

86.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the proposed Class were damaged in an amount to be proven at trial.

## COUNT II – FRAUD AND MISREPRESENTATION

(On Behalf of the Class)

87.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

88.     Defendants made material representations that were false, that defendants knew were false or were reckless as to the veracity and made with the inducement for Plaintiffs and the proposed Class to act upon.

89.     Specifically, and as detailed above, Defendants represented that RushCard customers would have complete access to their funds, except for a 5-hour period during the early morning hours of October 12, 2015.  Further, Defendants represented that RushCard customer funds would be secure and protected.

90.     Plaintiffs and the proposed Class acted in reliance on the false, material representations and omissions made by Defendants, which caused them injury.

91.     Plaintiffs and the proposed Class would not have deposited money into their RushCard accounts if they had known that they would be denied access to their funds for a prolonged period of time or if they had known that monies would go missing from their accounts.

92.     Defendants were aware that access to and protection of funds was a material fact in inducing Plaintiffs and the proposed Class to give them money in exchange for services and agreeing to the alleged contract.

93.     As a result of Defendants' fraudulent representations and fraudulent omissions, Plaintiffs and the proposed Class were induced into a contract that they otherwise would not have made and suffered financial injury, harm and damages as described in this Complaint.

## COUNT III – UNJUST ENRICHMENT

### (On Behalf of the Class)

94.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

95.     Plaintiffs and the proposed Class have conferred a benefit upon Defendants by purchasing and depositing monies into Defendants' RushCard, which did not perform as promised and/or did not have the attributes and benefits promised by Defendants.

96.     By their unfair, misleading and unlawful conduct alleged herein, Defendants have unjustly received and retained benefits at the expense of Plaintiffs and the proposed Class, including funds that Plaintiffs and the proposed Class paid to Defendants and funds deposited to Defendants' RushCard.

97.     Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and the proposed Class that they unjustly received as result of its unfair, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and the proposed Class.

98.     Plaintiffs and the proposed Class have suffered financial loss as a direct result of Defendant's conduct.

99.     Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading and unlawful conduct.

## COUNT IV – BREACH OF CONTRACT

### (On Behalf of the Class)

100.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

101.    Plaintiffs, and each member of the proposed Class, formed a contract with Defendants at the time they purchased a RushCard.  The terms of that contract include the promises and affirmations of fact made by Defendants through their marketing materials and statements, as described above, which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the proposed Class on the one hand, and Defendants on the other.

102.    In exchange for Defendants' promise of safety and convenience, Plaintiffs and Class members paid monthly fees and other charges for their RushCards.

103.    Plaintiff and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

104.    Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the proposed Class by denying customers access to their funds and, thus, not providing a product and service which provided the promised benefits as described above.

105.    As a result of Defendant's breach of its contract and warranties, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT V – CONVERSION

### (On Behalf of the Class)

106.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

107.    Plaintiffs, and each member of the Class, deposited money into their RushCard accounts.

108.    Defendants knowingly and intentionally exercised control over the monies belonging to Plaintiffs and Class members, retraining funds and denying Plaintiffs and Class members access to their funds.

109.    Because of the unlawful restraint imposed by Defendants, the rights of Plaintiffs and the Class members in their funds were interfered with and their funds could not be used in the matter in which they desired.

110.    Defendants also unlawfully imposed fees upon Plaintiffs and the Class members in connection with these restraints, depriving them of the use and control over their property.

111.    As a result of the foregoing actions of Defendants, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT VI – BREACH OF FIDUCIARY DUTY

### (On Behalf of the Class)

112.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

113.    Defendants owed a fiduciary duty to Plaintiffs and Class members to protect, secure and retain all monies that lawfully belonged to them.

114.    As alleged herein, Defendants breached those fiduciary duties by restraining funds ds that they had no right to restrain and in unlawfully charging fees to Plaintiffs and Class members during this period of restraint.

115.    Defendants breached those fiduciary duties by denying Plaintiffs and Class members access to the funds that lawfully belonged to them.

116.    Defendants breached those fiduciary duties by failing to secure and protect all of the funds Plaintiffs and Class members had in their RushCard accounts.

117.    As a result of the foregoing actions of Defendants, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT VII - VIOLATION OF THE NEW YORK
## DECEPTIVE ACTS AND PRACTICES LAW
**(N.Y. GEN. BUS. § 349, *et seq.*)**
(On Behalf of the Class)

118.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

119.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices in the state of New York.

120.    The foregoing acts and practices were directed at consumers.

121.    The foregoing deceptive acts and practices were misleading in a material way because they fundamentally misrepresented the security and protection of consumer funds and access to those funds.

122.    Plaintiffs and members of the proposed Class were injured as a direct and proximate result of Defendants' violation of the NYDAPL G.B.L. § 349 because they paid for RushCards and deposited money into their RushCard accounts, which they would not have done had they known the true facts.

123.    Plaintiffs and the proposed Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees and costs.

## COUNT VIII - VIOLATION OF THE NEW YORK FALSE ADVERTISING LAW
### (N.Y. GEN. BUS. § 350, *et seq.*)
(On Behalf of the Class)

124.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

125.    By the acts and conduct alleged herein, Defendants committed false advertising in the conduct of business, trade or commerce in the state of New York contrary to the NYFAL, G.B.L. § 350, *et seq.*

126.    NYFAL defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." The foregoing acts and practices were directed at consumers. G.B.L. § 350-a.

127.    The foregoing false advertisements are misleading in a material way because they fundamentally misrepresented the security and protection of consumer funds and access to those funds.

128.    Plaintiffs and members of the proposed Class were injured as a direct and proximate result of Defendant' violation of NYFAL because they paid for RushCards and deposited money into their RushCard accounts, which they would not have done had they known the true facts.

129.    Plaintiffs and the members of the proposed Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees.

## COUNT IX – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) Fla. Stat. §501.201

### (On behalf of the Florida Subclass)

130.   Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

131.   Plaintiffs Mianika Smith, Shari Goodman and Jermain Hayes (hereinafter "Plaintiffs" for this Count) bring this claim individually and on behalf of the Florida Subclass.

132.   At all times relevant hereto, the FDUTPA was in full force and effect.  Section 501.202 Fla. Stat. of FDUTPA provides in relevant part as follows:

> The provisions of this part shall be construed liberally to promote the following policies:
>
> (1) To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.
>
> (2) To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.
>
> (3) To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

133.   Plaintiffs and other members of the proposed subclass, as defined above, are "consumers" as defined by Florida Statute §501.203(7) and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

134.   Section 501.204 renders unlawful the "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

135.    FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

136.    For the reasons discussed herein, Defendants violated and continue to violate FDUPTA by engaging in the herein describe unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201 *et. seq*.  Defendants' affirmative misrepresentations and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

137.    Defendants represented that RushCard customers would have full access to the funds in their accounts, except for a noticed 5-hour period on October 12, 2015.  Defendants also represented that funds in RushCard accounts would be secure and protected.

138.    Plaintiffs and the proposed subclass deposited money into their RushCard accounts that they would not have deposited had they known of the material made by Defendants.

139.    Plaintiffs and the proposed subclass members justifiably relied on the misrepresentations of Defendants to their detriment as described herein by depositing money into their RushCard accounts.

140.    The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

141.    Plaintiffs and the proposed subclass reserve the right to allege other violations of FDUPTA as Defendants' conduct is ongoing.

142.    As a direct and proximate result of the foregoing, the Plaintiffs and the proposed subclass have been damaged in an amount to be determined at trial, including compensatory damages and other miscellaneous incidental and consequential damages.

143.    Plaintiffs and the proposed subclass seek damages, together with appropriate punitive damages, attorneys' fees, and costs of suit pursuant to the FDUTPA as well as any equitable relief to enjoin Defendants from engaging in the wrongdoing described herein.

## COUNT X – VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT (FBPA) O.C.G.A. §10-1-390 *et. seq*.

(On behalf of the Georgia Subclass)

144.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

145.    Plaintiff Jetaime Howard (hereinafter "Plaintiff" for this Count) brings this claim individually and on behalf of the Georgia Subclass.

146.    At all times relevant hereto, the FBPA was in full force and effect.

147.    O.C.G.A. §10-1-393(a) declares unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce to be unlawful.

148.    Plaintiff and other members of the proposed subclass, as defined above, are "consumers" as defined by the FBPA and the subject transactions, including the issuance of the RushCard,  are "trade or commerce" as defined by the FBPA.

149.    For the reasons discussed herein, Defendants violated and continue to violate the FBPA by engaging in the herein describe unconscionable, deceptive, unfair acts or practices proscribed by O.C.G.A. §10-1-390 *et. seq*.  Defendants' affirmative misrepresentations and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

150.    Defendants represented that RushCard customers would have full access to the funds in their accounts, except for a noticed 5-hour period on October 12, 2015.  Defendants also

represented that funds in RushCard accounts would be secure and protected.

151.    Plaintiff and the proposed subclass deposited money into their RushCard accounts that they would not have deposited had they known of the material made by Defendants.

152.    Plaintiff and the proposed subclass members justifiably relied on the misrepresentations of Defendants to their detriment as described herein by depositing money into their RushCard accounts.

153.    The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

154.    Plaintiff and the proposed subclass reserve the right to allege other violations of FBPA as Defendants' conduct is ongoing.

155.    As a direct and proximate result of the foregoing, the Plaintiff and the proposed subclass have been damaged in an amount to be determined at trial, including compensatory damages and other miscellaneous incidental and consequential damages.

156.    Plaintiff and the proposed subclass seek damages, together with appropriate punitive damages, attorneys' fees, costs of suit pursuant to the FBPA as well as any equitable relief to enjoin Defendants from engaging in the wrongdoing described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Stephanie Fuentes, Jetaime Howard, Mianika Smith, Shari Goodman and Jermain Hayes, on behalf of themselves and all others similarly situated, pray for relief as follows:

1.    Declaring this action to be a proper class action, certifying the proposed Class, Georgia Subclass, and Florida Subclass appointing Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

2.       An Order for injunctive relief requiring Defendants to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

3.       An Order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendants' past conduct;

4.       A judgment awarding Plaintiffs and Class, Georgia Subclass and Florida Subclass members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful, unfair, and fraudulent business practices and conduct;

5.       A judgment awarding Plaintiffs and Class, Georgia Subclass and Florida Subclass members actual damages;

6.       A judgment awarding Plaintiffs and Class, Georgia Subclass and Florida Subclass members exemplary damages for Defendant's knowing, willful, and intentional conduct;

7.       Pre-judgment and post-judgment interest;

8.       Attorneys' fees, expenses, and the costs of this action; and

9.       All other and further relief as this Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 23, 2015

By: */s/ Domenico Minerva*
_____

**MORGAN & MORGAN, P.C.**
Peter Safirstein
Domenico Minerva
28 West 44th Street, Suite 2001
New York, New York 10036
Tel:  (212) 564-1637
Fax:  (212) 564-1807
Email:  psafirstein@forthepeople.com
          dminerva@forthepeople.com

**MORGAN & MORGAN, TAMPA, P.A.**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis*
Florida Bar No. 324681
201 North Franklin Street 7th Floor
Tampa, Florida  33602
Tel:  (813) 223-5505
Email:  jyanchunis@forthepeople.com

**LAW OFFICE OF JEAN SUTTON**
**MARTIN PLLC**
Jean Sutton Martin*
North Carolina Bar No. 25703
2018 Eastwood Road, Suite 225
Wilmington, North Carolina 28403
Tel:  (910) 292-6676
Email:  jean@jsmlawoffice.com

***Attorneys for Plaintiffs and the Proposed***
***Class and Proposed Subclasses***

*\* Pro Hac Vice application to be submitted*

27