**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STEPHANIE FUENTES, JETAIME HOWARD, MIANIKA SMITH, SHARI GOODMAN, and JERMAIN HAYES, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>UNIRUSH, LLC d/b/a UNIRUSH FINANCIAL SERVICES, RUSH COMMUNICATIONS, LLC, RUSH COMMUNICATIONS of NYC, INC., META FINANCIAL GROUP, INC., and METABANK,<br><br>    Defendants. | No. 1:15-cv-08372-JPO |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND**
**CERTIFICATION OF THE SETTLEMENT CLASS**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................ 3

    A.   Plaintiffs' Allegations ..................................................................... 3

    B.   Settlement Negotiations .................................................................. 5

III.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 6

    A.   Terms of the Settlement Agreement ................................................. 8

    B.   Notification to Settlement Class Members ...................................... 11

    C.   The Court Should Grant Preliminary Approval of the Settlement ................. 13

IV.  CERTIFICATION OF THE PROPOSED CLASS FOR SETTLEMENT PURPOSES IS
    APPROPRIATE ..................................................................................... 15

    A.   Numerosity Under Rule 23(a)(1) .................................................... 17

    B.   Commonality Under Rule 23(a)(2) ................................................. 17

    C.   Typicality Under Rule 23(a)(3) ...................................................... 18

    D.   Adequacy of Representation Under Rule 23(a)(4) ............................ 19

    E.   The Requirements of Rule 23(b)(3) Are Met ................................... 20

V.   THE COURT SHOULD APPROVE THE NOTICE PROGRAM ................................ 23

VI.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ............................... 25

VII.  CONCLUSION ...................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591(1997) ........................................................................ 15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
      504 F. 3d 229 (2d Cir. 2007) ................................................................................................. 17

*Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ..................................................... 17

*DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171 (8th Cir. 1995) ................................................... 24

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010) .............................................. 16

*Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) ..................................................................... 23

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,* 301 F.R.D. 116 (S.D.N.Y. 2014) .. 17

*Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 at 17-18, 2013 WL
      1192479 (D.N.J. Mar. 22, 2013) ........................................................................................... 22

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)............................................................... 21

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 U.S. Dist. LEXIS
      119870, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ............................................. 20, 22, 23

*In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 324396
      (S.D.N.Y. Nov. 8, 2006) .......................................................................................................... 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) ........................... 18

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ..................... 14, 20

*In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241 (3d Cir. 2009)............................................. 23

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001)................. 7, 13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144(CM), 2009 U.S. Dist. LEXIS
      120953 (S.D.N.Y. Dec. 23 2009) ........................................................................................... 21

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S.
      Dist. LEXIS 9450 (S.D.N.Y. Fe. 1, 2007 ............................................................................. 24

*In re Metlife Demutualization Litig*., 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................ 6

*In re NASDAQ Mkt.- Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ......................... 14

*In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ........................................ 23

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ........................... 6

*In re  Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, 2008 WL
      2944620 (S.D.N.Y. July 31, 2008)........................................................................................... 6

*In re US Food Service Pricing Litig.*, 729 F.3d 108 (2d. Cir. 2013), *cert. denied,* __U.S., 134 S.
      Ct. 1938 (2014) ....................................................................................................................... 21

*Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408 (S.D.N.Y. 2013), *aff'd,* 602 F. App'x 3 (2d Cir.
      2015)....................................................................................................................................... 18

*Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56 (S.D.N.Y. 2014).................................... 8

*Keller v. AXA Equitable Life Ins. Co.,* 12-CV-4565, 2013 U.S. Dist. LEXIS 174164
      (S.D.N.Y. Dec. 12, 2013) ....................................................................................................... 18

*Labbate- D'Alauro v. GC Servs. Ltd. Pshp*., 168 F.R.D. 451 (E.D.N.Y. 1996) ......................... 22

*Lucas v. Kmart Corp*., 234 F.R.D. 688 (D. Colo. 2006)............................................................... 7

*Marisol A. v. Giuliani*, 1998 U.S. Dist. LEXIS 5760, 1998 WL 199927
      (S.D.N.Y. Apr. 23, 1998) .................................................................................................. 18, 19

*N.J. Carpenters Health Fund v. DLJ Mort. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326 (S.D.N.Y. Mar. 17, 2014).................................................................... 19

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1 (N.D. Ohio 1982) ....... 13

*Passafiume v. NRA Group, LLC*, 274 F.R.D. 424 (E.D.N.Y. Nov. 30, 2010).............................. 19

*Reade- Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) .......... 15, 24

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)........................................................................ 19

*Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998) ............................................................................................................................ 17

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) (*en banc*) ...................................... 21, 22

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004) ..................................................................... 23

*Torres v. Toback, Bernstein & Reiss LLP*, No. 11-1368, 2014 U.S. Dist. LEXIS 36925 (E.D.N.Y. Mar. 14, 2014)................................................................................................ 17, 18, 22

*Wallace v. Intralinks*, 302 F.R.D. 310 (S.D.N.Y. 2014)............................................................. 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96 (2d Cir. 2005) .......................................6


**Statutes**

28 U.S.C. § 1715(d)...................................................................................................................... 25


**Rules**

FED. R. CIV. P. 23(a)(1) ............................................................................................................... 17

FED. R. CIV. P. 23(a)(4) ............................................................................................................... 19

FED. R. CIV. P. 23(b)(3)................................................................................................... 16, 20, 21, 22

FED. R. CIV. P. 23(c)(2)(B) .................................................................................................... 23, 24

FED. R. CIV. P. 23(e).................................................................................................................... 25

FED. R. CIV. P. 23(e)(1) ............................................................................................................... 23

FED. R. CIV. P. 23(e)(2) .................................................................................................................7


**Treatises**

4 *Newberg on Class Actions* § 11.26 .............................................................................................7

*Manual for Complex Litigation (Fourth)* §21.632 (2004) ............................................................7

*Manual for Complex Litigation (Fourth)* §21.633 (2004) ............................................................7

*Manual for Complex Litigation (Fourth)* §30.44 (2004) ............................................................ 25

*Manual for Complex Litigation (Third)* §30.41 (1995) ................................................................7

## I.       INTRODUCTION

Plaintiffs Stephanie Fuentes, Jetaime Howard, Mianika Smith, Shari Goodman, Jermain Hayes, Ivy Huff, John Golden, Latayqa Little, Jackie Brown, Mnemosyne Collier, Stephanie Walton, Akil Patterson, William Townsend, Nicole Jones, and Marah Peterkin ("Plaintiffs" or "Class Representatives") respectfully submit this Memorandum in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, wherein they seek entry of an order: (i) granting preliminary approval of the proposed settlement as memorialized in the Stipulation and Agreement of Settlement that was executed on May 4, 2016 (the "Settlement Agreement" or "SA"),[1]; (ii) approving the form and manner of giving notice of the Settlement to the certified Class and approving the form and content of the Notice; (iii) provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (iv) approving the procedures set forth in Section VII of the Settlement Agreement for Settlement Class Members to exclude themselves from the Settlement Class; (v) staying the Action pending Final Approval of the Settlement; (vi) staying and/or enjoining, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim; and (vii) setting a hearing date for the final approval of the Settlement and its terms, including the proposed distribution of funds, a motion seeking a service award to the Class Representatives, and Class Counsel's motion for attorneys' fees, costs and expenses.

The underlying Actions (as defined later herein) between Plaintiffs and Defendants UniRush LLC d/b/a UniRush Financial Services, Rush Communications, LLC, Rush Communications of NYC, Inc. (together, the "Rush Defendants"), Defendants Meta Financial Group, Inc. and MetaBank (together, the "Meta Defendants") and MasterCard Incorporated

---

[1] The capitalized terms used in this Memorandum are defined in the Settlement Agreement.

(collectively, "Defendants") pertain to a longer than anticipated disruption in service for Defendants' RushCard services for portions of a period of time between October 12, 2015 and October 31, 2015 (the "Service Disruption"). Defendants' RushCard is a prepaid debit card that provides users with access to their funds and other financial services. As alleged by Plaintiffs, during the time of the Service Disruption, and for different durations, Plaintiffs and members of the Settlement Class were unable to access their RushCard accounts and, therefore, their funds, resulting for some in economic harm in the form of, *inter alia*, missed bill payments and the inability to pay for daily living expenses.

While Defendants dispute the claims alleged in the Actions and maintain that they have valid contractual and other defenses as to liability and damages as well as an enforceable arbitration provision that would prevent class-wide resolution of the Actions, Defendants have agreed to provide relief to Settlement Class Members as set forth in the Settlement Agreement. The Settlement Agreement and its exhibits are attached as Exhibit B to the Declaration of John A. Yanchunis submitted herewith (as Exhibit 1).

As discussed below, Plaintiffs and Class Counsel submit that the proposed Settlement is in the best interest of the Class and represents a fair, reasonable and adequate recovery particularly in light of the risks and costs of litigation, the arbitration provision contained in the RushCard customer agreements which would require that class members pursue their claims individually and as great expense disproportionately to the sums in dispute, the difficulties faced in seeking to certify a class, the lengthy delays were the case to be litigated through class certification, appellate review of any certification decision, and trial, and the speed by which class members will receive relief as provided in the proposed plan of distribution to the Class. Plaintiffs and Class Counsel have concluded that the Settlement Agreement provides fair, just and substantial benefits to Settlement Class Members, which will be described to the class in a comprehensive Notice Plan,

2

and it satisfies the requirements of Rule 23(e) of the Federal Rules of Civil Procedure.  The Settlement Agreement represents a fair, reasonable, and adequate result for each Settlement Class Member in consideration of the potential legal and factual issues and challenges raised by the Actions. For the reasons set forth herein, Plaintiffs respectfully request that the Court grant preliminarily approval of the Settlement Agreement.

## II.   FACTUAL BACKGROUND

### A.    Plaintiffs' Allegations

This class action lawsuit was initially commenced on October 23, 2015, by Plaintiffs Stephanie Fuentes, Jetaime Howard, Mianika Smith, Shari Goodman, and Jermain Hayes in the case captioned *Fuentes, et al. v. UniRush, LLC, et al.*, No. 1:15-cv-08372 (S.D.N.Y.) (the "*Fuentes* Action"). The putative class action asserted claims for negligence, breach of contract, breach of fiduciary duty, unjust enrichment, conversion, fraud, and violations of consumer protection statutes arising from the Service Disruption. ECF No. 1.  On October 30, 2015, Plaintiffs Ivy Huff, John Golden, Latayqa Little, Jackie Brown, Mnemosyne Collier, Stephanie Walton, Akil Patterson and William Townsend filed a putative class action in the United States District Court for the Eastern District of California, captioned *Huff, et al. v. UniRush, LLC, et al.*, No. 2:15-cv-05996 (E.D. Cal.) (the "*Huff* Action") asserting materially similar allegations as the *Fuentes* Action. The *Huff* Action also named MasterCard Incorporated as a defendant.  On November 2, 2015, Plaintiff Marah Peterkin filed a putative class action in this Court, captioned *Peterkin, et al. v. UniRush, LLC, et al.*, No. 1:15-cv-08573 (S.D.N.Y.) (the "*Peterkin* Action"), asserting materially similar allegations as the *Fuentes* Action.  On November 5, 2015, Plaintiff Nicole Jones filed a putative class action in the United States District Court for the Eastern District of

Pennsylvania, captioned *Jones v. UniRush, LLC, et al.*, 5:15-cv-05996 (E.D. Pa.) (the "*Jones* Action"), asserting materially similar allegations as the *Fuentes* Action.

In each of these four actions, Plaintiffs seek to represent classes of RushCard cardholders who had open RushCard accounts as of October 12, 2015 and, thus, were affected by the Service Disruption. To effectuate Defendant UniRush's agreement with a subsidiary of MasterCard to become the new processing company for RushCard services, RushCard cardholders were informed there would be a short disruption in service on October 12, 2015 to allow for the conversion to take place. SA § I(B). The conversion, however, resulted in RushCard account holders experiencing a longer than anticipated disruption in service for portions of the period of time between October 12, 2015 and October 31, 2015. *Id.* at SA § I(C).

The *Fuentes* Action alleged approximately 17 million Americans were considered "unbanked" as they were without bank accounts. ECF No. 1, ¶ 19. Another 58 million Americans were "underbanked," meaning they lacked access to traditional banking services, from check cards to savings accounts. *Id.* According to its website, the RushCard was established to help those Americans who did not have access to traditional banking services by providing them with financial services. *Id.* at ¶ 21. RushCard was established with a belief that "every American should have access to an affordable place to keep their hard-earned money – one that's safe and convenient." *Id.*

Nonetheless, during the Service Disruption, Plaintiffs allege that they and certain other RushCard cardholders did not have access to their funds, causing immense hardship, including the inability to pay for basic necessities such as food, rent, electricity and gas. *Id.* at ¶ 28. Additionally, Plaintiffs allege customers were unable to pay an array of bills, resulting in late fees being assessed. *Id.* After customers eventually regained access to their RushCard accounts, they allegedly noticed discrepancies in their account balances, and charges for balance inquiry

4

fees for their failed ATM withdrawal attempts during the time period the RushCard system was down. *Id.* at ¶ 29.

Section 30 of the RushCard Cardholder Agreement purports to require that certain disputes be individually arbitrated. *Id.* at ¶ 63. Plaintiffs' position is that Section 30 is unenforceable because it is both substantively and procedurally unconscionable. *Id.* Defendants, however, maintain that Section 30 is enforceable. But for the agreement now before the court for consideration, Defendants' success on the issue of arbitration could result in severely limited relief, or no relief at all, to the proposed Settlement Class.

**B.    Settlement Negotiations**

On December 10, 2015, counsel for the *Fuentes* Plaintiffs and counsel for the Rush Defendants and the Meta Defendants met to discuss the facts and the law underlying the Actions. During that discussion, Defendants provided information relevant to the allegations of the Actions, including information about the RushCard processing system and the Service Disruption, data about company and customer experiences during the Service Disruption, and the terms of relevant cardholder agreements, including arbitration provisions. Counsel for the *Fuentes* Plaintiffs provided information detailing the effect the Service Disruption had on many individual cardholders. The *Fuentes* Plaintiffs, the Rush Defendants and the Meta Defendants engaged in discussions regarding the potential strengths and weaknesses of the allegations in support of, and defenses to, the Actions.

During the weeks that followed, counsel for the *Fuentes* Plaintiffs, the Rush Defendants and the Meta Defendants continued discussions via telephone.  At the request of the Rush Defendants and the Meta Defendants, counsel for the *Fuentes* Plaintiffs provided additional information regarding individual cardholder experiences during the Service Disruption.  Further, counsel for the *Fuentes* Plaintiffs provided Defendants with a proposed settlement matrix and

claim form.  Stipulated extensions were sought and granted in all of the Actions and by which the Parties disclosed to the Court that there were on-going settlement discussions.

On January 7, 2016, counsel for the *Fuentes* Plaintiffs and counsel for the Rush Defendants and the Meta Defendants participated in a day-long, in-person settlement discussion and negotiation. The Rush Defendants and the Meta Defendants exchanged additional information regarding the Service Disruption and impacted cardholders and the *Fuentes* Plaintiffs provided additional information about cardholder experiences.  The Rush Defendants, the Meta Defendants and the *Fuentes* Plaintiffs also discussed MasterCard participating in the potential settlement.

On January 22, 2016, counsel for the *Fuentes* Plaintiffs and counsel for the Rush Defendants met again to continue settlement discussions regarding settlement terms.  After further negotiations, the Parties reached an agreement in principle with regard to the material terms of the proposed settlement, as memorialized in the Settlement Agreement.

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*. 396 F.3d 96, 116-17 (2d Cir. 2005) (emphasizing the strong judicial policy in favor of class action settlements); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). Indeed, "class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Metlife Demutualization Litig*., 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *In re  Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (internal quotations omitted)).

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval.  The approval process typically takes place in two stages.  For the first stage, a court preliminarily approves the settlement pending a fairness hearing, certifies the class for settlement purposes and authorizes notice to be given to the settlement class. *Manual for Complex Litigation (Fourth)* §21.632 at 320 (2004).   Once the class has received notice and has an opportunity to object to or opt out of the settlement, the court then holds a final settlement hearing.  *Id*. §21.633 at 321-22.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *See In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 324396, at *4-5 (S.D.N.Y. Nov. 8, 2006).

The general standard by which courts are guided when deciding whether to grant preliminary approval of a class action settlement is whether the proposed settlement falls within the range of what could be found "fair, reasonable and adequate." *Id.* at *5; *see also* FED. R. CIV. P. 23(e)(2). The first step is to make a preliminary evaluation into the fairness of the settlement to determine whether the settlement is within the "range of reasonableness."[2]  4 *Newberg on Class Actions* § 11.26.  At this stage, the issues are whether the settlement appears to fall within the range of possible approval, and whether the Court finds probable cause to submit the proposed

---

[2] *See also, In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 3 35 (N.D. Ohio 2001) (preliminary approval should be granted if there are no "grounds to doubt [the settlement's] fairness or other obvious deficiencies") (quoting Fed. Jud. Ctr., *Manual for Complex Litig.*, § 30.41, at 236-37 (3rd ed. 1995)); *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006) ("[t]he purpose of the preliminary approval process is to determine whether there is any reason <u>not</u> to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (citations omitted; emphasis supplied).

settlement to class members and hold a full-scale fairness hearing. *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014).

     **A.**     **Terms of the Settlement Agreement**

If approved, the proposed settlement will provide substantial benefits to the following nationwide Settlement Class:

> All cardholders with an open RushCard account as of October 12, 2015 and who had authorized use of that account at least once during the period of July 14, 2015 through and including October 12, 2015.[3]

The valuable benefits made available pursuant to the settlement squarely address the issues raised in the litigation and provide very significant relief to the proposed Settlement Class Members. As described above, and without admitting liability, Defendants have agreed to provide the following relief to compensate Settlement Class Members for inconveniences and losses as a result of the Service Disruption:

     **<u>Fee Holiday and Payment</u>**

Settlement Class Members with a current RushCard account received a fee holiday from November 1, 2015 to February 29, 2016 (the "Fee Holiday"). During this time period, RushCard cardholders were not assessed any monthly fees, transaction fees, ATM fees or any other fees provided for in the fee schedule of the RushCard Cardholder Agreement effective November 17, 2014.

Additionally, certain Settlement Class Members with a current RushCard account received a credit to their account in the amount of $25.00. Certain other Settlement Class Members whose RushCard accounts were closed or otherwise inactivated were directly sent $25.00.

---

[3] Excluded from the Settlement Class are the Court, the officers and directors of Defendants, and persons who timely and validly request exclusion from the Settlement Class.

Settlement Class Members did not have to file a Claim or take any action to receive these benefits.

## Tier One Relief – Fee Reimbursement

Settlement Class Members will be reimbursed for all fees assessed by the Rush Defendants during the period of October 12, 2015 through October 31, 2015, to the extent those fees were not previously reimbursed or credited the Settlement Class Member's account.  Monthly fees assessed for the period of October 1, 2015 through October 31, 2015 will be prorated such that Settlement Class Members will be reimbursed only for the portion of the monthly fees allocable to the period from October 12, 2015 through October 31, 2015.

Within ten business days of the Effective Date (as defined in the Settlement Agreement), Defendants agree to pay such claims.  Reimbursement of these fees shall be provided by Defendants as an account credit for Settlement Class Members with a current and active RushCard account.  Settlement Class Members whose RushCard account has been closed or otherwise inactivated will be paid the amount of the fee reimbursement through the Settlement Administrator.

Settlement Class Members do not have to file a Claim or take any action to receive these benefits.

## Tier Two Relief – Payment for Losses Without Documentation

Settlement Class Members who attempted to use their RushCard or to access their account between October 12, 2015 and October 31, 2015 and who claim to have suffered a financial or other loss as a result of the Service Disruption but do not have or do not wish to provide Reasonable Documentation will be eligible for a payment of $100.00, subject to an offset for any prior payments received to compensate for out-of-pocket expenses, other than the Fee Holiday, resulting

from the Service Disruption.  Claims for Tier Two Relief will be subject to a two-part verification process described in SA §IV(6).

Within ten (10) business days of the Effective Date (or, if the Settlement Administrator has not yet provided a list of accounts to which payment is due by the Effective date, then no later than ten business days after the Settlement Administrator has provided such information),  Defendants agree to provide sufficient funds to the Settlement Administrator to pay all valid Claims, net of offsets, submitted under Tier Two up to an aggregate amount not to exceed five million dollars ($5,000,000).  Should the total number of valid Claims submitted under Tier Two, net of offsets, exceed $5,000,000, each Claim shall be reduced on a *pro rata* basis. If the amount of valid Claims is less than $5,000,000, Defendants will retain any unclaimed amount.

### Tier Three Relief – Payment for Substantiated Losses

Settlement Class Members who attempted to use their RushCard or to access their account between October 12, 2015 and October 31, 2015 and who provide Reasonable Documentation of Substantiated Losses will be eligible for a payment of the lesser of such amount of Substantiated Losses or $500.00, subject to an offset for any prior payments received to compensate for out-of-pocket expenses, other than the Fee Holiday, resulting from the Service Disruption.

Tier Three Claims will be subject to the same two-part claims and verification process as described in Tier Two except that Settlement Class Members seeking compensation under this tier additionally will be required to provide Reasonable Documentation to support their Claims.

Within ten (10) business days of the Effective Date (or, if the Settlement Administrator shall not have provided a list of accounts to which payment is due by the Effective date, then no later than ten business days after the Settlement Administrator shall have provided such information), Defendants agree to provide sufficient funds to the Settlement Administrator to pay all valid Claims, net of offsets, submitted under Tier Three up to an aggregate amount not to exceed

10

one and one-half million dollars ($1,500,000).  Should the total number of valid Claims submitted under Tier Three, net of offsets, exceed $1,500,000, each Claim shall be reduced on a *pro rata* basis.  If the amount of valid Claims is less than $1,500,000, Defendants will retain any unclaimed amount.

The Settlement also included releases as more fully described in the Settlement Agreement.

### Other Key Provisions

Defendants will pay for the costs of claims administration and class notice. In addition, Defendants have agreed to pay a court approved service awards not to exceed $500.00 per Settlement Class Representative and court approved attorneys' fees, costs and expenses in an amount not to exceed $1,500,000.00.

### B.     Notification to Settlement Class Members

The Settlement Agreement contains a comprehensive notice program which, subject to Court approval, will be paid for by Defendants and administered by the Settlement Administrator.  Defendants have agreed to use Angeion Group as the Settlement Administrator. The notice program will be delivered via e-mail, U.S. mail, and through a Settlement Website, and includes the following:

) The Settlement Administrator shall send E-Mail Notice to all Settlement Class Members for whom UniRush, LLC can ascertain an e-mail address from its records with reasonable effort. If an e-mail address cannot be ascertained or the Settlement Administrator learns (through an email bounce-back or otherwise) that the e-mail address in UniRush's records is invalid, the Settlement Administrator shall send direct Mail Notice to all Settlement Class Members for whom UniRush can ascertain a mailing address from its records with reasonable effort.

⟩       For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified. The Settlement Administrator need make only one attempt to re-mail any Mail Notices that are returned as undeliverable.

⟩       The Notice shall include a procedure for Settlement Class Members to exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include the individual's name and address; a statement that he or she wants to be excluded from the Action; and the individual's signature. Only one individual may be excluded from the Settlement Class per each written notification.  Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement.

⟩       The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses. Objections to the Settlement or to the application for fees, costs, and expenses must be filed electronically with the Court, or mailed to the Clerk of the Court, Co-Lead Counsel, and Defendants' counsel. For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk

of Court, Co-Lead Counsel, and Defendants' Counsel, at the addresses listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice.

)     The E-Mail and Mail Notice Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable.

)     The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court. The Notice shall be posted on the Settlement Website by the Notice Deadline.

)     Within seven (7) days after the Notice Deadline, the Settlement Administrator shall provide Co-Lead Counsel and Defendants with one or more affidavits confirming that the E-Mail Notice and Mail Notice Program, and posting of Notice on the Settlement Website were completed in accordance with the Parties' instructions and the Court's approval. Co-Lead Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Plaintiffs' motion for final approval of the Settlement.

The Settlement Agreement provides that the Settlement Class Members will have seventy-five (75) days after the Notice Deadline to submit a valid Claim Form or to file Objections or Requests for Exclusion.

## C.     The Court Should Grant Preliminary Approval of the Settlement

Unlike at the final approval stage, "the Court, at [the preliminary approval] juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review." *In re Inter-Op,* 204 F.R.D. at 350.  Instead, "the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation." *Id.* (citing *Ohio Public Interest Campaign v. Fisher Foods, Inc*., 546 F. Supp. 1, 7 (N.D. Ohio 1982)). In evaluating fairness, not every factor must weigh in favor of

settlement, rather the court should consider the totality of the circumstances. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436,456 (S.D.N.Y. 2004).  As discussed above, preliminary approval of a proposed settlement is appropriate where, as here, it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or  excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval. *In re NASDAQ Mkt.- Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

In light of these standards, the criteria for granting preliminary approval of this  complex class action lawsuit are met. The settlement was reached as a result of extensive, arm's length negotiations between experienced counsel, and the review by Plaintiffs' counsel of information and data voluntarily produced by Defendants. Counsel for both parties believe the settlement is in the best interests of their respective clients. The settlement will also remove the uncertainties and risks to both parties from proceeding further in the litigation.

Although Plaintiffs and Class Counsel believe that the claims asserted are meritorious, continued litigation against Defendants posed significant risks that made any recovery uncertain. At the outset, continued litigation of this matter would require the Court to resolve two separate threshold questions concerning the viability of certifying the proposed Class.  First, the Court would have to decide the question of the arbitrability of the Plaintiffs' claims. Section 30 of the RushCard Cardholder Agreement requires all cardholder disputes to be arbitrated individually. Defendants have maintained that this provision should be enforced and that all claims should be submitted to individual arbitration proceedings.  Second, should this Court find that Plaintiffs' claims are not subject to arbitration, the Court would have to turn to the question of class

certification and Defendants' contention that individualized factual inquiries and damages and legal variation among the laws of the states would preclude class certification.

In light of these difficult issues, the monetary benefits of the settlement are appropriate and the timing in which the benefits will be provided is significant.  Class members will receive three types of benefits without taking any action; Defendants have paid or will pay those benefits automatically and immediately.  Further, Class members can receive compensation for losses without having the burden of providing any documentation to support their damages. Class members with more significant losses may file supporting documentation to seek greater relief under the Tier Three benefits.  As discussed below, Plaintiffs and Class Counsel submit that the proposed Settlement is in the best interest of the Class and represents a fair, reasonable and adequate recovery particularly in light of the risks and costs of litigation, the arbitration provision contained in the RushCard customer agreements, and the swiftness of the Settlement and the immediate recovery provided in the proposed plan of distribution to the Class.

Given the hurdles Plaintiffs would have to overcome if they were to litigate this case to verdict and the benefits provided by the Settlement, approving the Settlement Agreement is in the best interests of the proposed Settlement Class.

## IV.     CERTIFICATION OF THE PROPOSED CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court is also requested to certify the proposed Settlement Class for purposes of the Settlement under Fed. R. Civ. P. 23(a) and 23(b)(3). This Court has stated that, so long as the requirements of Fed. R. Civ. P. 23 are met, "[c]ertification of a class for settlement purposes only is permissible and appropriate,…" *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 619-21 (1997).  The Second Circuit has acknowledged the

propriety of certifying a settlement class.  Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *Prudential*, 163 F.R.D. at 205.

As such, Plaintiffs seek the conditional certification of the Settlement Class set forth above and in the Settlement Agreement.[4]

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)."  *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 564 (D.N.J. 2010).  The four requirements of FED. R. CIV. P. 23(a) are numerosity, commonality, typicality, and adequacy.  In addition, Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]."  FED. R. CIV. P. 23(b)(3).

As discussed below, these requirements are met for purposes of settlement in this case.  The Settlement Agreement proposes to give Settlement Class Members prompt and certain relief.  This relief is particularly valuable given the litigation risks presented by this case.  Under the circumstances, the settlement is more than fair, reasonable and adequate for Plaintiffs and Settlement Class Members.

---

[4] Defendants have agreed to certification of the class in this case for settlement purposes only. In the event that the Court does not approve the settlement, Defendants will argue that certification is improper because the requirements of FED. R. CIV. P. 23 cannot be met other than for purposes of settlement.  Defendants will also argue that Section 30 of the RushCard Cardholder Agreement should be enforced and that all claims should be submitted to individual arbitration proceedings.

### A.   Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Plaintiffs are not required to show that joinder is impossible, but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F. 3d 229, 244-45 (2d Cir. 2007); *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,* 301 F.R.D. 116, 131 (S.D.N.Y. 2014). "In the Second Circuit, numerosity is presumed if the putative class consists of more than 40 individuals." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-1368, 2014 U.S. Dist. LEXIS 36925, at *10 (E.D.N.Y. Mar. 14, 2014) (citing *Consol. Rail Corp. v. Hyde Park.*, 47 F.3d 473, 482-83 (2d Cir. 1995). Here, more than 400,000 individuals maintained RushCard accounts during the Service Disruption.[5]  Numerosity is, therefore, easily satisfied for settlement purposes.

### B.   Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  *See Cent. States* 504 F. 3d at 245; FED. R. CIV. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of

---

[5] *See,* Jonelle Marte, *More than 132,000 RushCard users were locked out of accounts for days*, WASHINGTON POST, Dec. 7, 2015, available at: https://www.washingtonpost.com/news/get-there/wp/2015/12/07/more-than-132000-rushcard-users-were-locked-out-of-accounts-for-days/ (last visited May 10, 2016).

Rule 23(a)(2) even a single common question will do." *Id*. at 2556; *see also Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998). Courts in the Second Circuit have described the commonality threshold as a "low bar." *Torres*, 2014 U.S. Dist. LEXIS 36925, at *14.

In this case, there are a myriad of common questions of law and fact, such as whether the Defendants owed a duty to protect and secure customer funds and provide their users with access to their funds, whether Defendants breached that duty, whether Defendants knew their representations regarding the Service Disruption were false and misleading, whether Defendants breached their contracts, and whether Plaintiffs have actionable claims. In addition, whether the arbitration and class action waiver provision of Section 30 of the RushCard Cardholder Agreement is valid and enforceable is a common issue because each Cardholder Agreement contained this provision. Commonality is, therefore, satisfied for settlement purposes. *See, e.g., Marisol A. v. Giuliani*, 1998 U.S. Dist. LEXIS 5760, 1998 WL 199927 (S.D.N.Y. Apr. 23, 1998) (commonality "hinges not on the individual circumstances of each plaintiff, but on the actions of defendants"); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (S.D.N.Y. 2013), *aff'd,* 602 F. App'x 3 (2d Cir. 2015) (defendant's uniform conduct as to all class members weighs in favor of commonality).

## C.    Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R. CIV. P. 23(a)(3). "[T]ypicality does not require that the representatives' claims be identical to those of the class members." *Torres*, 2014 U.S. Dist. LEXIS 36925, at *19 (quoting *Keller v. AXA Equitable Life Ins. Co.,* 12-CV-4565, 2013 U.S. Dist. LEXIS 174164, at *4 (S.D.N.Y. Dec. 12, 2013)) (internal quotations omitted). "Rather, the representative plaintiff must simply show that each class member's claim arises from the same course of events and each

class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)) (internal quotations omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Passafiume v. NRA Group, LLC*, 274 F.R.D. 424, 429(E.D.N.Y. Nov. 30, 2010) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by Defendants related to the Service Disruption.  Like commonality, typicality is plainly satisfied here.

### D.      Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Generally speaking, the "adequacy requirement is not demanding."  *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014). The inquiry into adequacy examines whether "(1) there is no conflict of interest between the named plaintiffs and other members of the plaintiff class and (2) class counsel is qualified, experienced, and  generally able to conduct the litigation." *Passafiume*, 274 F.R.D. at 429 (internal quotations omitted) (quoting *Marisol. A.,* 126 F.3d at 378).

A "class representative must … possess the same interest and suffer the same injury as the class members."  *N.J. Carpenters Health Fund v. DLJ Mort. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326 at *18 (S.D.N.Y. Mar. 17, 2014).  Here, all of the Class Representatives are adequate, in that they were all RushCard cardholders, used Defendants' RushCard services during the relevant time period, and allegedly suffered harm as a result of the Service Disruption, as did all of the other Settlement Class Members.  Plaintiffs' interests are not

antagonistic with the Settlement Class and no fundamental conflict exists.  They have also each actively participated in the litigation of this case, and have been in regular communication with their attorneys regarding these proceedings.  Plaintiffs have had, and continue to have, every incentive to litigate this case to the fullest extent and maximize the amount recovered for the entire Settlement Class.

With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the investigation of the facts underlying the claims, including the interviews of numerous class members who contacted Class Counsel, and the prosecution of this action. Class Counsel have a wealth of experience in litigating  complex class action lawsuits, and were able to negotiate a settlement for the Settlement Class that is fair, reasonable, and adequate. The respective firm resumes for each of the attorneys seeking to be appointed Class Counsel is attached as Exhibit B to the Declaration of Jean Sutton Martin submitted herewith (as Exhibit 2).  *See, e.g.*, *Glob. Crossing*, 225 F.R.D. at 453 (holding class counsel adequate based on extensive experience in complex litigation and advocacy that resulted in settlement for the class).  As such, the Court should appoint John A. Yanchunis and Jean Sutton Martin as Co-Lead Counsel, and additionally Charles J. LaDuca, Michael McShane, Hunter Shkolnik, Lewis Eidson and Joseph G. Sauder as Class Counsel for the Settlement Class and determine that Rule 23(a)'s adequacy requirement is satisfied for settlement purposes.

### E.      The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has  two components: predominance and superiority. *See* FED. R. CIV. P. 23(b)(3). "The Rule  23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in that  both require that  common  questions exist, but subdivision (b)(3) contains  the  more  stringent

requirement that common issues 'predominate' over individual issues." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 U.S. Dist. LEXIS 119870, at \*25, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) (internal quotations omitted) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Food Service Pricing Litig.*, 729 F.3d 108, 118 (2d. Cir. 2013), *cert. denied*, __U.S., 134 S. Ct. 1938 (2014).   Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.  *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144(CM), 2009 U.S. Dist. LEXIS 120953 at \*11 (S.D.N.Y. Dec. 23 2009). Courts have stated that the focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 298 (3d Cir. 2011) (*en banc*).

21

As to whether class certification is the superior method of litigation, Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Torres*, 2014 U.S. Dist. LEXIS 36925, at *28 (quoting FED. R. CIV. P. 23(b)(3)).

"Class actions are found to be superior to individual trials 'when the main objectives of Rule 23 are served,' including 'the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.'" *Id* (quoting *Labbate- D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)). "Class actions are also often the superior form of adjudication when the remedies available to the individual class members are so small that members would lack incentives to proceed individually." *Id.* (citations omitted).

Here, for settlement purposes, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the primary issue would be whether Defendants are liable for the Service Disruption. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See Countrywide*, 2009 U.S. Dist. LEXIS 119870, at *26 ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members."). *Accord, Sullivan*, 667 F.3d at 299; *Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 at 17-18, 2013 WL 1192479 (D.N.J. Mar. 22, 2013). So, too, here. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for settlement purposes.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for settlement purposes. *See* FED. R. CIV. P. 23(b)(3). The Settlement Agreement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Members who are dissatisfied with the settlement to object to the Settlement or to exclude themselves. The settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendants by resolving this case as a class action. And, because the parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are obviated. *Sullivan*, 667 F.3d at 302-03; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3dCir. 2009). Therefore, "class status here is not only the superior means, but probably the only feasible [way]…to establish liability and perhaps damages." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied for settlement purposes, certification of the proposed Settlement Class is appropriate.

## V.     THE COURT SHOULD APPROVE THE NOTICE PROGRAM

Once the Court has made the determination that preliminary approval of the settlement is warranted, the next step is to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See* FED. R. CIV. P. 23(e)(1).  In this vein, the Court must also schedule a final fairness hearing, at which it may decide whether to grant final approval to the  settlement. *See* FED. R. CIV. P. 23(e)(2).  And because  Plaintiffs here seek certification of the Settlement Class under Rule 23(b)(3), "the Court must direct to class members the  best  notice  practicable

under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *See Countrywide*, 2009 U.S. Dist. LEXIS 119870, at *42-43 (citing FED. R. CIV. P. 23(c)(2)(B)). In order to satisfy these standards and "comport with the requirements of due process, [the] notice must be 'reasonably calculated to reach interested parties.'" *Id.* at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)); *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1176 (8th Cir. 1995) ("Notice of a settlement proposal need only be as directed by the district court... and reasonable enough to satisfy due process.").

Notice "need not be perfect, but need be only the best notice practicable under the circumstances." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 at *27 (S.D.N.Y. Feb. 1, 2007). The notice program in this case is the best notice practicable under the circumstances to reach all Settlement Class Members. RushCard cardholders are required to maintain a viable and working email address on file with their accounts. Defendants themselves will compile and transmit to the Claims Administrator a list of the Settlement Class Members with their contact information and the Claims Administrator in turn will contact those Settlement Class Members directly by email or mail regarding the settlement. Notice of the settlement will also be available on a Settlement website maintained by the Claims Administrator. This notice is designed to reach as many of the Settlement Class Members as possible, and fully comports with due process under the circumstances of this case.

Finally, the content and substance of the proposed Class Notice—which, in its various forms, are attached as Exhibits B, C & D to the Settlement Agreement—will include all necessary legal requirements and provide a comprehensive explanation of the settlement in simple, non-legalistic terms. *See* FED. R. CIV. P. 23(c)(2)(B); *Passafiume,* 274 F.R.D. at 431 (settlement notice "must fairly apprise the prospective members of the class of the pendency of the class action, the

terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement.'") (quoting *Reade-Alvarez*, 237 F.R.D. at 34).  It will also provide information about the procedures that Settlement Class Members must follow if they want to object to the settlement or exclude themselves from it.  Accordingly, Plaintiffs respectfully request that the Court approve the Notice Program.

## VI.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the settlement, address Class Counsel's request for attorneys' fees, expenses and  an incentive award for the Class Representatives, consider any objections and exclusions,  and determine whether to dismiss this action with prejudice. *See Manual for  Complex Litig.* § 30.44. Plaintiffs respectfully request that the final approval hearing be scheduled for 90 days (or shortly after 90 days) following the dates on which the appropriate state and federal officials are  served with the notification required by the Class Action Fairness Act. *See* 28 U.S.C. § 1715(d).

## VII.   CONCLUSION

Because there are no "obvious deficiencies" in the proposed Settlement, the Settlement is well within the range of possible approval, and there are sufficient grounds to submit it to Settlement Class Members, the standards for granting preliminary approval are readily satisfied here.  Plaintiffs respectfully submit that this settlement is fair, adequate, and reasonable; that the requirements for final approval will be satisfied; and that Settlement Class Members will be provided with notice in a manner that satisfies the requirements of due process and FED. R. CIV. P. 23(e).

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) provisionally certifying this case as a class action pursuant to FED. CIV. P.  23(a),  23(b)(3), and 23(e) for the purpose of effectuating a class action settlement of the claims against Defendants; (2)

preliminarily approving the settlement as fair, adequate, and reasonable; (3) directing notice to Settlement Class Members consistent with the Notice Program and approving the form and content of the Notice; (4) approving the procedures set forth in Section VII of the Settlement Agreement for Settlement Class Members to exclude themselves from the Settlement Class; (5) staying the Action pending Final Approval of the Settlement; (6) staying and/or enjoining, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim; and (7) scheduling a Final Approval Hearing.

Plaintiffs' Motion for Preliminary Approval is unopposed by Defendants.

Dated: May 10, 2016                           Respectfully submitted,

                                              /s/ John A. Yanchunis
                                              JOHN A. YANCHUNIS
                                              Florida Bar No. 324681
                                              **Morgan & Morgan**
                                              **Complex Litigation Group**
                                              201 N. Franklin Street, 7th Floor
                                              Tampa, Florida 33602
                                              Telephone: (813) 223-5505
                                              Email: jyanchunis@ForThePeople.com

                                              /s/ Jean Sutton Martin
                                              JEAN SUTTON MARTIN
                                              North Carolina Bar Number 25703
                                              **Law Office of Jean Sutton Martin PLLC**
                                              2018 Eastwood Road Suite 225
                                              Wilmington, NC 28403
                                              Telephone: (910) 292-6676
                                              Email: jean@jsmlawoffice.com

                                              *Proposed Co-Lead Counsel for Plaintiffs and the*
                                              *Settlement Class*

                                              Charles J. LaDuca
                                              **Cuneo Gilbert & LaDuca, LLP**
                                              8120 Woodmont Ave, Suite 810
                                              Bethesda, MD 20814

26

Telephone: (202) 789-3960
Email:  charles@cuneolaw.com


Michael McShane
**Audet & Partners, LLP**
711 Van Ness Ave. Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Email:  mmcshane@audetlaw.com


Hunter J. Shkolnik
**Napoli Shkolnik PLLC**
1301 Avenue of the Americas, 10th Floor
New York, NY 10019
Telephone: (212) 397-1000
Email:  hunter@napolilaw.com

Lewis Eidson
**Colson Hicks Eidson**
225 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Telephone: (305) 467-7400
Email:  luly@colson.com

Joseph G. Sauder
**McCuneWright LLP**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (610) 200-0580
Email:  jgs@mccunewrite.com

***Proposed Class Counsel for Plaintiffs and the
Settlement Class***

27

## CERTIFICATE OF SERVICE

I, Jean Sutton Martin, certify that I caused the foregoing to be electronically filed in this case on May 10, 2016 using the Court's CM/ECF System, thereby serving it upon all counsel of record in this case.

/s/ Jean Sutton Martin
Law Office of Jean Sutton Martin PLLC
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (910) 292-6676
Email: jean@jsmlawoffice.com